IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-429-D

| | | |
|---|---|---|
| PEOPLE FOR THE ETHICAL TREATMENT OF ANIMALS, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | ANSWER |
| UNITED STATES DEPARTMENT OF AGRICULTURE, et al. | ) ) ) | |
| Defendants. | ) | |

1.  Paragraph 1 contains legal conclusions to which no response is required.  To the extent that an answer is required, Defendants deny the allegations in paragraph 1, and specifically deny that the renewal of an existing dealer's or exhibitor's valid license may be refused by the U.S. Department of Agriculture ("USDA") based upon the licensee's having been cited for noncompliance with the Animal Welfare Act, 7 U.S.C. § 2131 *et seq.* ("AWA" or "Act"), or its implementing regulations, 9 C.F.R. § 1.1 *et seq.*; that USDA's adherence to its own licensing regulations constitutes a practice of "rubber-stamping;" that USDA "makes a mockery of its statutory mandate;" or that the renewal of an existing,

valid license constitutes the "granting" of a new license.

2.    Paragraph 2 contains legal conclusions to which no response is required.    To the extent that an answer is required, Defendants deny the allegations in paragraph 2, and specifically deny that the renewal of the existing, valid licenses held by the entities identified in the complaint may be refused by the USDA based upon the licensee's having been cited for noncompliance with the AWA or its regulations.

3.    Paragraph 3 contains legal conclusions to which no response is required.    To the extent that an answer is required, Defendants deny that the licensing regulations, or the USDA's adherence to such regulations, is "illegal" or not in accordance with the AWA; that the AWA requires the USDA to refuse to renew an existing, valid license because the licensee was previously cited for noncompliance with the AWA or its regulations; or that the USDA's focus on enforcement of the AWA pursuant to 7 U.S.C. § 2149 "allows chronic violators to continue to subject animals to inhumane care and treatment."

4.    Paragraph 4 contains legal conclusions to which no response is required.    To the extent that an answer is required, Defendants admit that in enacting the AWA in 1966, Congress stated that one of the purposes of the legislation

was to insure that certain animals intended for use in research facilities were provided humane care and treatment; that Congress originally authorized the Secretary of Agriculture ("Secretary") to regulate the transportation, sale, and handling of dogs, cats, hamsters, guinea pigs, rabbits, and nonhuman primates intended to be used for purposes of research or experimentation, and for other purposes; and that in 1970, the Act was amended to authorize the Secretary to regulate other warm-blooded animals when used in research, exhibition, or the wholesale pet trade. Defendants further admit that pursuant to section 2151 of the Act, the Secretary promulgated regulations for the renewal of previously-issued licenses upon submission of an application, with certification, 9 C.F.R. § 2.2(b); payment of an annual fee, 9 C.F.R. § 2.6; and submission of an annual report, 9 C.F.R. § 2.7; and that these three administrative requirements are all that are required under the regulations for renewal of a previously-issued license, as was explained in the Federal Register when the regulations were amended in 1995, and the USDA explained that "the regulations make no provision for the denial of a license renewal as long as the licensee filed an application for license renewal on time, submitted an annual report as required by § 2.7, and has paid

the required fees." 60 Fed. Reg. 13893-01, 13894, 1995 WL 106573 (Mar. 15, 1995). Defendants deny the remaining allegations of Paragraph 4, and specifically deny that USDA's adherence to the licensing regulations "condemns thousands of animals to suffer for years on end" and violates the Administrative Procedures Act; and deny that the renewal of an existing, valid license constitutes the issuance of a new license within the meaning of 7 U.S.C. § 2133.

5.    Denied.

6.    Paragraph 6 is a statement of jurisdiction to which no response is required.

7.    Paragraph 7 is a statement of venue to which no response is required.

8.    Paragraph 8 contains legal conclusions to which no response is required.

9.    Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 9 and therefore deny same.

10. Defendants admit that PETA routinely sends submissions to the USDA, and that those submissions speak for themselves. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 10 and therefore deny same.

11.   Defendants lack sufficient information or knowledge as to whether a particular act "is directly contrary to PETA's mission" or not.   Defendants deny the remaining allegations of Paragraph 11.

12.   Defendants admit that PETA has submitted complaints to the USDA about AWA licensees, and that those complaints speak for themselves.   Defendants further aver that actions that PETA considers to be "violations of the AWA" may not necessarily be determined to be violations in administrative or civil enforcement proceedings.   Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 12, and therefore deny same.

13.   Defendants deny that the renewal of existing, valid AWA licenses held by the licensees identified in the complaint is illegal or contrary to the AWA, or constitutes "rubber-stamping."   Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 13, and therefore deny same.

14.   Defendants deny that the renewal of existing, valid AWA licenses held by the licensees identified in the complaint is illegal or contrary to the AWA, or constitutes "rubber-stamping."   Defendants lack sufficient information or

knowledge to determine the truth of the remaining allegations in Paragraph 14, and therefore deny same.

15. Defendants deny that the renewal of existing, valid AWA licenses held by the licensees identified in the complaint is illegal or contrary to the AWA. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 15, and therefore deny same.

16. Defendants deny that the renewal of existing, valid AWA licenses held by the licensees identified in the complaint is illegal or contrary to the AWA; deny that USDA has "fail[ed] to comply with the AWA;" and deny that without an AWA license, such licensees "would either have to improve conditions at their own facilities or relocate the animals to other facilities that comply with the AWA." Defendants admit that absent a valid AWA license, the licensees identified in the complaint could not legally exhibit or deal in "animals" (as that term is defined in the AWA) but aver that such licensees could continue to maintain their animals as pets and would be beyond the jurisdiction of the AWA. Defendants further aver that were the USDA to decline to renew the licenses currently held by such licensees notwithstanding their compliance with the renewal regulations, the licensees

could challenge the non-renewal of their respective licenses in the United States district courts, pursuant to 7 U.S.C. § 2146(c), as contrary to the AWA regulations; or could immediately apply for new licenses, pursuant to 9 C.F.R. §§ 2.1, 2.2(a), 2.3, and 2.5(c). Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 16, and therefore deny same.

17. Defendants admit that the AWA vests rulemaking, licensing and enforcement authority in the Secretary, and that the Secretary has delegated this authority to the Under Secretary for Marketing and Regulatory Programs, who is responsible for the administration of the Animal and Plant Health Inspection Service ("APHIS"). 7 U.S.C. § 2132(b); 7 C.F.R. § 2.22(a)(2)(vi). The remainder of Paragraph 17 contains legal conclusions to which no response is required.

18. Defendants admit the first sentence of Paragraph 18. Defendants deny that the renewal of existing, valid licenses pursuant to the AWA regulations constitutes "rubber-stamping" or the issuance of a new license. The remainder of Paragraph 18 contains legal conclusions to which no response is required.

19. Defendants aver that the AWA speaks for itself;

that its purposes are set forth in 7 U.S.C. § 2131; and that the Plaintiff's excerpt in Paragraph 19 of the Complaint is one portion of the congressional statements of policy in the AWA.

20. Defendants aver that the AWA speaks for itself.

21. Defendants aver that the AWA speaks for itself.

22. Defendants aver that the AWA speaks for itself.

23. Defendants admit the first sentence of Paragraph 23. Defendants deny Plaintiff's characterization that "AWA licenses expire annually." Defendants further aver that the regulations promulgated under the AWA set forth the requirements for license renewal, including provisions other than the excerpts selectively quoted and characterized in Plaintiff's complaint, and that the regulations speak for themselves. Defendants specifically aver that section 2.5 of the Regulations ("Duration of license and termination of license"), found at 9 C.F.R. § 2.5, provides in full:

"(a) A license issued under this part shall be valid and effective unless:
(1) The license has been revoked or suspended pursuant to section 19 of the Act.
(2) The license is voluntarily terminated upon request of the licensee, in writing, to the AC Regional Director.
(3) The license has expired or been terminated under this part.
(4) The annual license fee has not been paid to the appropriate Animal Care regional office as

required. There will not be a refund of the annual license fee if a license is terminated prior to its expiration date.

(b) Any person who is licensed must file an application for a license renewal and an annual report form (APHIS Form 7003), as required by § 2.7 of this part, and pay the required annual license fee. The required annual license fee must be received in the appropriate Animal Care regional office on or before the expiration date of the license or the license will expire and automatically terminate. Failure to comply with the annual reporting requirements or pay the required annual license fee on or before the expiration date of the license will result in automatic termination of the license.

(c) Any person who seeks the reinstatement of a license that has been automatically terminated must follow the procedure applicable to new applicants for a license set forth in § 2.1.

(d) Licenses are issued to specific persons for specific premises and do not transfer upon change of ownership, nor are they valid at a different location.

(e) A license which is invalid under this part shall be surrendered to the AC Regional Director. If the license cannot be found, the licensee shall provide a written statement so stating to the AC Regional Director."

24. Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal, including provisions other than the excerpts selectively quoted and characterized in Plaintiff's complaint, and that the regulations speak for themselves.

25. Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal,

including provisions other than the excerpts selectively quoted and characterized in Plaintiff's complaint, and that the regulations speak for themselves.

26. Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal, including provisions other than the excerpts selectively quoted and characterized in Plaintiff's complaint, and that the regulations speak for themselves.

27. Defendants aver that the Federal Register and public records, which include language other than the excerpts selectively quoted and characterized in Plaintiff's complaint, speak for themselves.

28. Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal, and that the regulations speak for themselves.

29. Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal, including provisions other than the excerpts selectively quoted and characterized in Plaintiff's complaint, and that the regulations speak for themselves.

30. Defendants aver that the regulations promulgated under the AWA set forth the legal consequences of a license suspension or revocation, and that those regulations speak

for themselves.

31. Defendants aver that the regulations promulgated under the AWA set forth the grounds for the issuance or denial of an initial license application, and that those regulations speak for themselves.

32. Defendants aver that the regulations promulgated under the AWA set forth minimum standards for the veterinary care and safe handling of animals by licensees, including provisions other than the regulations selectively cited by Plaintiff, and that the regulations speak for themselves.

33. Defendants aver that the regulations and standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for the handling of animals, and that the regulations and standards speak for themselves.

34. Defendants aver that the regulations and standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for the handling of animals, and that the regulations and standards speak for themselves.

35. Defendants aver that 9 C.F.R. §§ 3.75-3.92 contains the standards promulgated under the AWA for the humane handling, care, treatment, and transportation of nonhuman primates.

36. Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for environmental enrichment for nonhuman primates, and that the standards speak for themselves.

37. Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for environmental enrichment for nonhuman primates, and that the standards speak for themselves.

38. Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for housing and environmental enrichment for nonhuman primates, and that the standards speak for themselves.

39. Admitted.

40. Defendants aver that there are currently no standards under the AWA that are specific to birds.

41. Admitted.

42. Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for housing for warm-blooded animals, and that the standards speak for themselves.

43. Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for housing for warm-blooded animals, and that the standards

speak for themselves.

44.   Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for housing for warm-blooded animals, and that the standards speak for themselves.

45.   Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for feeding, water, and sanitation for warm-blooded animals, and that the standards speak for themselves.

46.   Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for sanitation for warm-blooded animals, and that the standards speak for themselves.

47.   Defendants aver that the standards promulgated under the AWA set forth, *inter alia*, the minimum requirements for employees for warm-blooded animals, and that the standards speak for themselves.

48.   Denied.

49.   Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal, and that the regulations speak for themselves.

50.   Defendants aver that the regulations promulgated under the AWA set forth the requirements for license renewal,

and that the regulations speak for themselves.

51. Admitted.

52. Denied.

53. Defendants admit that the annual renewal date of AWA license 34-C-0227 is December 31. To the extent a further response is required, Defendants deny the allegations of Paragraph 53.

54. Defendants admit that Summer Wind timely submitted its 2014 renewal forms and the required renewal fee. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 54, and therefore deny same.

55. Defendants admit that in 2014, USDA renewed AWA license 34-C-0227 in accordance with the AWA regulations. To the extent a further response is required, Defendants deny the allegations of Paragraph 55.

56. Denied.

57. Denied.

58. Denied.

59. Defendants admit that in 2014, APHIS conducted 17 inspections of Summer Wind, documented noncompliance with the AWA regulations at certain of those inspections, initiated an investigation and gathered documentary evidence, and that the

inspection reports prepared by APHIS inspectors speak for themselves. Defendants further aver that in or about May 2011, APHIS instituted administrative enforcement proceedings against Summer Wind by filing a complaint alleging violations of the AWA and the AWA regulations, *In re Summer Wind Farm Sanctuary*, AWA Docket No. 11-0223, which matter was resolved by a consent decision filed on March 8, 2012, providing, *inter alia*, for the suspension of AWA license 34-C-0227, and the assessment of a civil penalty. To the extent a further response is required, Defendants deny the allegations of Paragraph 59.

60. Defendants admit that the aforementioned inspection reports of APHIS inspections of Summer Wind were in APHIS's possession on December 31, 2014. To the extent a further response is required, Defendants deny the allegations of Paragraph 60.

61. Defendants admit only that on or about December 31, 2014, USDA renewed AWA license 34-C-0227 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 61.

62. Defendants admit that on February 10, 2015, APHIS conducted an inspection of Summer Wind and documented noncompliance with the AWA regulations, and the inspection

report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 62.

63. Denied.

64. Admitted.

65. Denied.

66. Defendants admit that the annual renewal date of AWA license 64-C-0178 is June 13. To the extent a further response is required, Defendants deny the allegations of Paragraph 66.

67. Defendants admit that The Mobile Zoo timely submitted its 2015 renewal forms and the required renewal fee. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 67, and therefore deny same.

68. Defendants admit that in 2015, USDA renewed AWA license 64-C-0178 in accordance with the AWA regulations. To the extent a further response is required, Defendants deny the allegations of Paragraph 68.

69. Denied.

70. Denied.

71. Defendants admit that APHIS has inspected The Mobile Zoo and has received complaints from PETA about The

Mobile Zoo, and that the inspection reports and complaints speak for themselves. Defendants are without sufficient information to admit or deny the remaining allegations of Paragraph 71 and therefore deny them.

72. Defendants admit that APHIS conducted inspections of The Mobile Zoo on July 15, August 20, and September 30, 2014, and on January 13, and May 20, 2015, and documented noncompliance with the AWA regulations on four of those inspections, and that the inspection reports prepared by APHIS inspectors speak for themselves. Defendants further aver that APHIS initiated an investigation of The Mobile Zoo in FY 2013, and on January 16, 2015, instituted administrative enforcement proceedings against both The Mobile Zoo and its president, John Hightower, by filing a complaint alleging violations of the AWA and the AWA regulations. *In re The Mobile Zoo, and John Hightower*, AWA Docket Nos. 15-0060 & 15-0061. To the extent a further response is required, Defendants deny the allegations of Paragraph 72.

73. Defendants admit that the aforementioned inspection reports of APHIS inspections of The Mobile Zoo were in APHIS's possession on June 13, 2015, and that PETA sent APHIS complaints about The Mobile Zoo on or before June 13, 2015.

To the extent a further response is required, Defendants deny the allegations of Paragraph 73.

74. Defendants admit only that on or about June 13, 2015, USDA renewed AWA license 64-C-0178 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 61.

75. Defendants admit that APHIS conducted an inspection of The Mobile Zoo on June 5, 2015, and documented noncompliance with the AWA regulations, and that the inspection report prepared by APHIS speaks for itself. Defendants further aver that on September 25, 2015, APHIS filed an amended complaint in *In re The Mobile Zoo, and John Hightower*, AWA Docket Nos. 15-0060 & 15-0061. To the extent a further response is required, Defendants deny the allegations of Paragraph 75.

76. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 76 and therefore deny same.

77. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's

correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 77 and therefore deny same.

78. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 78 and therefore deny same.

79. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 79 and therefore deny same.

80. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 80 and therefore deny same.

81. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 81 and therefore deny same.

82. Defendants admit that PETA has sent correspondence to USDA personnel regarding The Mobile Zoo, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 82 and therefore deny same.

83. Defendants admit that PETA sent APHIS complaints and communications about The Mobile Zoo on or before June 13, 2015. To the extent a further response is required, Defendants deny the allegations of Paragraph 83.

84. Defendants admit only that on or about June 13, 2015, USDA renewed AWA license 64-C-0178 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 84.

85. Denied.

86. Defendants admit that Henry Hampton holds AWA license 55-B-0069, and does business as Lazy 5 Ranch in

Mooresville, North Carolina, and The Farm at Walnut Creek in Sugarcreek, Ohio.

87. Denied.

88. Defendants admit that the annual renewal date of AWA license 55-B-0069 is August 13. To the extent a further response is required, Defendants deny the allegations of Paragraph 88.

89. Defendants admit that Henry Hampton timely submitted his 2014 renewal forms and the required renewal fee. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 89, and therefore deny same.

90. Defendants admit that in 2014, USDA renewed AWA license 55-B-0069 in accordance with the AWA regulations. To the extent a further response is required, Defendants deny the allegations of Paragraph 90.

91. Denied.

92. Denied.

93. Defendants admit that APHIS has inspected Henry Hampton's facilities at Lazy 5 Ranch ("Lazy 5") and The Farm at Walnut Creek ("Walnut Creek"), and has received complaints about Henry Hampton from PETA, and that those inspection reports and complaints speak for themselves. Defendants deny

the remainder of Paragraph 93.

94. Defendants admit that on October 22, 2013, February 19, 2014, April 1, 2014, June 4, 2014, and June 30, 2014, APHIS conducted inspections of Walnut Creek and documented noncompliance with the AWA regulations, and the inspection reports prepared by the APHIS inspectors speak for themselves. To the extent a further response is required, Defendants deny the allegations of Paragraph 94.

95. Defendants admit that on June 4, 2014, APHIS conducted an inspection of Walnut Creek and documented noncompliance with section 2.4 of the AWA regulations, and the inspection report prepared by the APHIS inspector speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 95.

96. Defendants admit that the aforementioned inspection reports of APHIS inspections of Henry Hampton were in APHIS's possession on or about August 13, 2014. To the extent a further response is required, Defendants deny the allegations of Paragraph 96.

97. Defendants admit only that on or about August 13, 2014, USDA renewed AWA license 55-B-0069 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 97.

98. Defendants admit that on April 22, 2015, APHIS conducted an inspection of Walnut Creek and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 98.

99. Defendants admit that on April 22, 2015, APHIS conducted an inspection of Walnut Creek and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 99.

100. Defendants admit that on April 1, 2014, APHIS conducted an inspection of Lazy 5 and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 100.

101. Defendants admit that the aforementioned inspection report of APHIS inspections of Lazy 5 was in APHIS's possession on or about August 13, 2014. To the extent a further response is required, Defendants deny the allegations of Paragraph 101.

102. Defendants admit only that on or about August 13, 2014, USDA renewed AWA license 55-B-0069 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 102.

103. Defendants admit that on March 17, 2015, APHIS conducted an inspection of Lazy 5 and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 103.

104. Defendants admit that PETA has sent correspondence to USDA personnel regarding Henry Hampton, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 104 and therefore deny same.

105. Defendants admit that PETA has sent correspondence to USDA personnel regarding Henry Hampton, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 105 and therefore deny same.

106. Defendants admit that PETA has sent correspondence

to USDA personnel regarding Henry Hampton, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 106 and therefore deny same.

107. Defendants admit that PETA has sent correspondence to USDA personnel regarding Henry Hampton, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 107 and therefore deny same.

108. Defendants admit that PETA sent APHIS complaints and communications about Henry Hampton on or before August 13, 2014. To the extent a further response is required, Defendants deny the allegations of Paragraph 108.

109. Defendants admit only that on or about August 13, 2014, USDA renewed AWA license 55-B-0069 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 109.

110. Denied.

111. Defendants admit that Tri-State Zoological Park of Western Maryland, Inc., a Maryland corporation, holds AWA license 51-C-0064, and operates a zoo in Cumberland, Maryland

named Tri-State Zoological Park.

112. Denied.

113. Defendants admit that the annual renewal date of AWA license 51-C-0064 is April 30. To the extent a further response is required, Defendants deny the allegations of Paragraph 113.

114. Defendants admit that Tri-State Zoological Park of Western Maryland, Inc., timely submitted its 2015 renewal forms and the required renewal fee. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 114, and therefore deny same.

115. Defendants admit that in 2015, USDA renewed AWA license 51-C-0064 in accordance with the AWA regulations. To the extent a further response is required, Defendants deny the allegations of Paragraph 115.

116. Denied.

117. Denied.

118. Defendants admit that APHIS has inspected Tri-State Zoological Park and has received complaints about Tri-State Zoological Park from PETA, and that those inspection reports and complaints speak for themselves. Defendants deny the remainder of Paragraph 118.

119. Defendants admit that on November 6, 2014, and March 4, 2015, APHIS inspectors conducted inspections of Tri-State Zoological Park and documented noncompliance with the AWA regulations, and the inspection reports prepared by the APHIS inspectors speak for themselves. Defendants further aver that on May 11, 2011, APHIS instituted administrative enforcement proceedings against Tri-State Zoological Park of Western Maryland, Inc., and Robert Candy, by filing a complaint alleging violations of the AWA and the AWA regulations, *In re Tri-State Zoological Park of Western Maryland, Inc., and Robert L. Candy*, AWA Docket No. 11-0222, which matter was heard on February 8 and 9, 2012, and a final decision and order was filed by USDA's Judicial Officer on March 22, 2013, ordering, *inter alia*, the suspension of AWA license 51-C-0064. To the extent a further response is required, Defendants deny the allegations of Paragraph 119.

120. Defendants admit that the aforementioned inspection reports of APHIS inspections of Tri-State Zoological Park were in APHIS's possession on or about April 30, 2015. To the extent a further response is required, Defendants deny the allegations of Paragraph 120.

121. Denied.

122. Defendants admit that on May 27, 2015, APHIS

inspectors conducted an inspection of Tri-State Zoological Park and documented noncompliance with the AWA regulations, and the inspection reports prepared by the APHIS inspectors speak for themselves. To the extent a further response is required, Defendants deny the allegations of Paragraph 122.

123. Denied.

124. Denied.

125. Defendants admit that PETA has sent correspondence to USDA personnel regarding Tri-State Zoological Park, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 125 and therefore deny same.

126. Defendants admit that PETA has sent correspondence to USDA personnel regarding Tri-State Zoological Park, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 126 and therefore deny same.

127. Defendants admit that PETA has sent correspondence to USDA personnel regarding Tri-State Zoological Park, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the

truth of the remaining allegations in Paragraph 127 and therefore deny same.

128. Defendants admit that PETA has sent correspondence to USDA personnel regarding Tri-State Zoological Park, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 128 and therefore deny same.

129. Paragraph 129 contains legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations of Paragraph 129.

130. Defendants admit that PETA sent APHIS complaints and communications about Tri-State Zoological Park on or before April 30, 2015. To the extent a further response is required, Defendants deny the allegations of Paragraph 130.

131. Defendants admit only that on or about April 30, 2015, USDA renewed AWA license 51-C-0064 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 131.

132. Denied.

133. Defendants admit that Michael Todd holds AWA license 33-C-0388, and that Mr. Todd has represented to APHIS that he does business as "All Things Wild County Line Farms &

Ponies," and that his business address is in Chicago, Illinois.

134. Defendants are without sufficient information to admit or deny the allegations of Paragraph 134, and therefore deny same.

135. Denied.

136. Defendants admit that the annual expiration date of AWA license 33-C-0388 is June 12. To the extent a further response is required, Defendants deny the allegations of Paragraph 136.

137. Defendants admit that Michael Todd timely submitted his 2015 renewal forms and the required renewal fee. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 137, and therefore deny same.

138. Defendants admit that in 2015, USDA renewed AWA license 33-C-0388 in accordance with the AWA regulations. To the extent a further response is required, Defendants deny the allegations of Paragraph 138.

139. Denied.

140. Denied.

141. Defendants admit that APHIS has inspected Michael Todd and has received complaints about Michael Todd from

PETA, and that those inspection reports and complaints speak for themselves. Defendants deny the remainder of Paragraph 141.

142. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 142, and therefore deny same.

143. Defendants aver that ZooCats, Inc., a Texas corporation, held AWA license 74-C-0426; that Marcus Cook was a principal of ZooCats, Inc.; and that AWA license 74-C-0426 was revoked effective February 17, 2012, by order of the Secretary in *In re ZooCats, Inc., Marcus Cook a/k/a Marcus Cline-Hines Cook, and Melissa Coody, a/k/a Misty Coody, d/b/a Zoo Dynamics and ZooCats Zoological Systems*, 68 Agric. Dec. 737 (2009), *aff'd sub. nom. ZooCats, Inc., v. U.S. Dep't of Agric.*, 417 Fed. Appx. 378 (5th Cir. 2011). To the extent a further response is required, Defendants deny the allegations of Paragraph 143.

144. Defendants admit that on September 24, 2008, an initial decision and order was filed by Administrative Law Judge (ALJ) Victor W. Palmer in *In re ZooCats, Inc., etc., et al.*, AWA Docket No. 03-0035, that on July 27, 2009, the USDA's Judicial Officer (JO) filed a decision and order in the *ZooCats* case, and that the ALJ and JO filings in that

case speak for themselves.  Defendants further admit that the JO affirmed with modifications the initial decision and order filed by ALJ Palmer, and that the JO stated:

"Respondents have repeatedly endangered the lives of the viewing public, as well  as the lives of their animals.  Mr. Cook has a history of deceiving law enforcement agencies.  To allow Mr. Cook or Ms. Coody to have an Animal Welfare Act exhibitor license in either of their names, or through a corporation or other entity, would subject both the animals they would exhibit and the public, to an unacceptable level of risk of harm.  The Animal Welfare Act license under which Respondents operate is, therefore, revoked."

To the extent a further response is required, Defendants deny the allegations of Paragraph 144.

145. Defendants admit that on June 8, 2012, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself.   To the extent a further response is required, Defendants deny the allegations of Paragraph 145.

146. Defendants admit that on June 6, 2014, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself.   To the extent a further response is required, Defendants deny the allegations of Paragraph 146.

147. Defendants admit that the aforementioned inspection

reports of APHIS inspections of Michael Todd were in APHIS's possession on or about June 12, 2014. To the extent a further response is required, Defendants deny the allegations of Paragraph 147.

148. Defendants admit only that on or about June 12, 2014, USDA renewed AWA license 33-C-0388 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 148.

149. Defendants are without sufficient information to admit or deny the allegations of Paragraph 149 and therefore deny them.

150. Defendants admit that on April 22, 2012, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 150.

151. Defendants admit that on June 8, 2012, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself. To the extent a further response is required, Defendants deny the allegations of Paragraph 151.

152. Defendants admit that on July 26, 2012, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself.   To the extent a further response is required, Defendants deny the allegations of Paragraph 152.

153. Defendants admit that on July 26, 2012, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself.   To the extent a further response is required, Defendants deny the allegations of Paragraph 153.

154. Defendants admit that on November 3, 2014, APHIS inspectors conducted an inspection of Michael Todd and documented noncompliance with the AWA regulations, and the inspection report prepared by the APHIS inspectors speaks for itself.   To the extent a further response is required, Defendants deny the allegations of Paragraph 154.

155. Defendants are without sufficient information to admit or deny the allegations of Paragraph 155, and therefore deny same.

156. Defendants admit that on July 7, July 11, August 20, October 7, November 3, 2014, and January 15, 2015, APHIS

inspectors conducted inspections of Michael Todd and documented noncompliance with the AWA regulations, and the inspection reports prepared by the APHIS inspectors speak for themselves. To the extent a further response is required, Defendants deny the allegations of Paragraph 156.

157. Defendants admit that the aforementioned inspection reports of APHIS inspections of Michael Todd were in APHIS's possession on or about June 12, 2015. To the extent a further response is required, Defendants deny the allegations of Paragraph 157.

158. Defendants admit only that on or about June 12, 2015, USDA renewed AWA license 33-C-0388 in accordance with the AWA regulations. Defendants deny the remaining allegations of Paragraph 158.

159. Denied.

160. Defendants deny the first sentence of Paragraph 160. Defendants admit that PETA has sent correspondence to USDA personnel regarding Michael Todd, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 160 and therefore deny same.

161. Defendants admit that PETA has sent correspondence

to USDA personnel regarding Michael Todd, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 161 and therefore deny same.

162. Defendants admit that PETA has sent correspondence to USDA personnel regarding Michael Todd, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 162 and therefore deny same.

163. Defendants admit that PETA has sent correspondence to USDA personnel regarding Michael Todd, and that PETA's correspondence speaks for itself. Defendants lack sufficient information or knowledge to determine the truth of the remaining allegations in Paragraph 163 and therefore deny same.

164. Defendants admit that PETA sent APHIS complaints and communications about Michael Todd on or before June 12, 2015, and that the complaints and communications speak for themselves. To the extent a further response is required, Defendants deny the allegations of Paragraph 164.

165. Paragraph 165 contains legal conclusions to which

no response is required.  To the extent a further response is required, Defendants deny the allegations of Paragraph 165.

166. Defendants admit only that on or about June 12, 2015, USDA renewed AWA license 33-C-0388 in accordance with the AWA regulations.  Defendants deny the remaining allegations of Paragraph 166.

167. Denied.

168. Denied.

169. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 169 and therefore deny same.

170. Denied.

171. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 171 and therefore deny same.

172. Denied.

173. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 173 and therefore deny same.

174. Denied.

175. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 175 and therefore deny same.

176. Denied.

177. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 177 and therefore deny same.

178. Denied

179. Defendants lack sufficient information or knowledge to determine the truth of the allegations in Paragraph 179 and therefore deny same.

The unnumbered "WHEREFORE" paragraph is a prayer for relief to which no answer is required. To the extent an answer is required, Defendants deny that Plaintiff is entitled to the relief requested or to any relief whatsoever.

Respectfully submitted, this 30th day of October, 2015.

THOMAS G. WALKER
United States Attorney

BY:  /s/ Matthew L. Fesak
     MATTHEW L. FESAK
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: matthew.fesak@usdoj.gov
N.C. Bar No. 35276
Attorney for Defendants

## CERTIFICATE OF SERVICE

I do hereby certify that I have this 30th day of October, 2015, served a copy of the foregoing upon Jonathan D. Sasser and Joseph Hammond with Ellis & Winters, LLP, by electronically filing the foregoing with the Court on this date using the CM/ECF system or by placing a copy in the U.S. Mail.

BY: /s/ Matthew L. Fesak
MATTHEW L. FESAK
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4530
Facsimile: (919)856-4821
Email: matthew.fesak@usdoj.gov
N.C. Bar No. 35276
Attorney for Defendants