IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-429-D

PEOPLE FOR THE ETHICAL )
TREATMENT OF ANIMALS, INC., )
                              )
               Plaintiff, )
                              )
           v. )                 **ORDER**
                              )
UNITED STATES DEPARTMENT OF )
AGRICULTURE, et al., )
                              )
               Defendants. )

On August 26, 2015, People for the Ethical Treatment of Animals, Inc. ("PETA" or "plaintiff") filed a complaint against the United States Department of Agriculture ("USDA") and Tom Vilsack, Secretary of the USDA, in his official capacity (collectively, "defendants") [D.E. 1].[1] PETA alleges that the USDA license-renewal process for animal exhibitions violates the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–08. On October 30, 2015, the USDA answered [D.E. 7] and moved for judgment on the pleadings [D.E. 8, 9]. PETA responded in opposition [D.E. 16], and the USDA replied [D.E. 17]. As discussed below, the court grants defendants' motion for judgment on the pleadings.

I.

The USDA regulates the treatment of animals in zoos and other exhibits. See Compl. [D.E. 1] ¶¶ 10, 17, 19–21. It licenses animal exhibitors, inspects their facilities, and issues citations to exhibitors whose facilities fail to meet the USDA's animal-treatment standards. See, e.g., id. ¶¶ 1,

---

[1] An official-capacity suit is, in fact, an action against the government entity that the official represents. Kentucky v. Graham, 473 U.S. 159, 169 (1985); Brandon v. Holt, 469 U.S. 464, 471–72 (1985); Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 n.55 (1978). Thus, the court refers to the defendants collectively as "the USDA."

17, 20–21, 32–47, 56, 59, 62, 69, 71–72, 75, 91, 93–95. The USDA also accepts complaints from third parties who accuse exhibitors of violating animal-treatment standards. See, e.g., id. ¶¶ 76–82.

USDA exhibitor licenses expire after one year. Id. ¶ 23. Exhibitors must renew licenses annually by submitting a signed application form, an annual fee, and a report of the animals owned, held, or exhibited during the previous year. Id. ¶¶ 23–25. By signing the renewal form, an exhibitor certifies compliance with the applicable regulations and standards. Id. ¶ 26. If an exhibitor completes each of these requirements, the USDA renews the license, even if the USDA recently cited the exhibitor for violating animal-treatment standards. Id. ¶¶ 28, 48–50; see, e.g., id. ¶¶ 54–62, 65–68, 71–75, 91–103, 110, 115, 118–22, 124, 144–46, 148, 152, 154, 156, 158.

PETA is a non-profit organization "dedicated to protecting animals from abuse, neglect, and cruelty." Id. ¶ 9. PETA's complaint alleges that the USDA has a "policy, pattern, and practice" of issuing renewals to noncompliant exhibitors, and it gives five specific examples of exhibitors whose licenses were renewed despite recent complaints or citations. Id. ¶¶ 48, 51–167. This policy directly frustrates PETA's mission and causes it to divert resources away from its other activities. See id. ¶¶ 9–16. PETA seeks declaratory and injunctive relief.

## II.

Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A court should grant a motion for judgment on the pleadings only if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." Park Univ. Enters. v. Am. Cas. Co. of Reading, 442 F.3d 1239, 1244 (10th Cir. 2006) (quotation omitted), abrogation on other grounds recognized by Magnus, Inc. v. Diamond State Ins. Co., 545 F. App'x 750 (10th Cir. 2013) (unpublished); see Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 375 (4th Cir. 2012); Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 405–06 (4th Cir. 2002).

2

A court ruling on a Rule 12(c) motion for judgment on the pleadings applies the same standard as in a Rule 12(b)(6) motion to dismiss. See, e.g., Mayfield, 674 F.3d at 375; Burbach Broad. Co. of Del., 278 F.3d at 405–06. A motion under either rule tests the legal and factual sufficiency of the claim. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80, 684 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(c) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences in the "light most favorable to the [nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 347, 352–53 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013); Burbach Broad. Co. of Del., 278 F.3d at 406. A court need not accept a pleading's legal conclusions. Iqbal, 556 U.S. at 678–79; Giarratano, 521 F.3d at 302. Nor must it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted). Rather, plaintiffs' allegations must "nudge[] their claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausib[ility]." Iqbal, 556 U.S. at 678–79.

When evaluating a Rule 12 motion, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005); Fayetteville Inv'rs v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991). A court also may take judicial notice of public records such as court documents. See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In APA cases, however, a court need not wait for an administrative record to be compiled to decide a pure question of law. See, e.g., Animal Legal Def. Fund v. USDA, 789 F.3d 1206, 1224 n.13 (11th Cir. 2015). Rather, a court may decide a Rule 12(c)

3

motion before discovery begins. See Teachers' Ret. Sys. of La. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007).

III.

PETA alleges that the USDA's "policy, pattern, and practice of rubber-stamping" exhibitor license renewals and its renewal of five specific exhibitor licenses violates the APA. Compl. ¶¶ 168–79.[2] Under the APA, courts must "hold unlawful and set aside agency action . . . found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C); see Defs. of Wildlife v. N.C. Dep't of Transp., 762 F.3d 374, 393 (4th Cir. 2014); Occidental Eng'g Co. v. INS, 753 F.2d 766, 769–70 (9th Cir. 1985); Ohio Valley Envtl. Coal. v. Hurst, 604 F. Supp. 2d 860, 879 (S.D. W. Va. 2009). Plaintiff has the burden of proof. Sierra Club v. Marita, 46 F.3d 606, 619 (7th Cir. 1995). In reviewing an agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (quotation omitted); Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335 (4th Cir. 1995). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Babbitt, 66 F.3d at 1335 (quotation omitted).[3] Courts, however, "must not rubber-stamp administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Nat'l Treasury Emps. Union v. Fed. Labor Relations

---

[2] PETA has sufficiently alleged injury to support standing to sue. Compare Compl. ¶¶ 9–16, with Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–67 (1992), and White Tail Park, Inc. v. Stroube, 413 F.3d 451, 458–59 (4th Cir. 2005).

[3] When an agency has discretion to act, its decision not to exercise its discretionary authority is not subject to judicial review. See 5 U.S.C. § 701(a)(2). For example, a court cannot "substitute its judgment for that of the agency" and second-guess an agency's exercise of discretion not to initiate an enforcement action. See Heckler v. Chaney, 470 U.S. 821, 837–38 (1985).

4

Auth., 647 F.3d 514, 517 (4th Cir. 2011) (quotation and alteration omitted).

Although courts will not "rubber stamp" agency decisions, they give deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842–43 (1984), to certain statutory interpretations by agencies. When Congress delegates to an agency the authority to implement a statute, Congress implicitly delegates the authority to interpret it. Id. at 865–66. Chevron deference is a judicial "tool of statutory construction whereby courts are instructed to defer to the reasonable interpretations of expert agencies charged by Congress to fill any gap left, implicitly or explicitly, in the statutes they administer." Am. Online, Inc. v. AT & T Corp., 243 F.3d 812, 817 (4th Cir. 2001) (emphasis and quotation omitted). Chevron deference applies when (1) "the statutory language is silent or ambiguous with respect to the question posed" and (2) "the agency's answer is based on a permissible construction of the statute." Id. (quotation omitted).

PETA challenges the USDA's renewal of licenses for exhibitors and cites recent, documented violations of USDA regulations. To determine whether to apply Chevron deference, the court initially analyzes (1) the statutory authority granted to the USDA and (2) the USDA's interpretation of that statutory authority as manifested in its licensing and enforcement regulations. See Animal Legal Def. Fund, 789 F.3d at 1215–20.

A.

In 1966, Congress passed the Animal Welfare Act, 7 U.S.C. §§ 2131–2159 ("AWA") to regulate the transportation, handling, and treatment of animals. Animal Welfare Act of 1966, Pub. L. No. 89-544, § 1, 80 Stat. 350, 350 (codified as amended at 7 U.S.C. § 2131). The AWA delegates to the USDA authority to regulate the humane handling, care, treatment, and transportation of animals by dealers, research facilities, and exhibitors. See 7 U.S.C. §§ 2140, 2143; see also id. § 2132(b) (defining "secretary"). Standards for humane handling, care, treatment, and transportation must include minimum requirements for "handling, housing, feeding, watering, sanitation, ventilation, shelter[,] . . . veterinary care, and separation by species." See id. § 2143(a)(2)(A).

5

Carnivals, circuses, zoos, and other entities that "exhibit[] . . . animals . . . to the public for compensation" constitute "exhibitors" under the AWA, and the AWA imposes statutory obligations upon them. Id. § 2132(h); see, e.g., id. §§ 2131(1) (listing "humane care and treatment" of exhibit animals as a purpose of the AWA), 2133 (providing for USDA licensure of exhibitors), 2134 (requiring that exhibitors be licensed), 2136 (requiring that any exhibitors exempt under section 2133 register with the USDA), 2140 (granting the USDA authority to regulate exhibitors' recordkeeping), 2141 (granting the USDA authority to regulate the marking and identification of animals purchased, transported, or sold by exhibitors), 2143 (providing for regulation of animal treatment by exhibitors).

To exhibit animals, an exhibitor must "obtain[] a license from the [USDA]." Id. § 2134. The USDA "shall issue licenses to . . . exhibitors upon application therefor" and has authority to prescribe the "form and manner" of the application and establish a fee. Id. § 2133. The license shall not issue until the exhibitor "demonstrate[s] that his facilities comply with standards promulgated by the [USDA regarding the humane handling, care, treatment, and transportation of animals]." Id.; see id. § 2143.

The AWA grants the USDA discretion to "make such investigations or inspections as [it] deems necessary to determine whether any . . . exhibitor . . . has violated or is violating any provision of [the AWA] or any regulation or standard issued thereunder." Id. § 2146(a); see id. §§ 2147, 2151; see also id. § 2146(c). The USDA must inspect licensed animal research facilities at least annually, but the AWA imposes no such requirement regarding licensed exhibitors. Id. § 2146(a). "If the [USDA] has reason to believe that any person licensed as . . . [an] exhibitor . . . has violated or is violating any provision of this chapter, or any of the rules or regulations or standards promulgated by the [USDA] hereunder, [it] may suspend such person's license temporarily, but not to exceed 21 days." Id. § 2149(a). The USDA must then give the exhibitor notice and opportunity for hearing. Id. If after this process the USDA determines that a violation occurred, it may continue to suspend or revoke the exhibitor's license. Id. An exhibitor may not exhibit animals with a suspended or

revoked license. Id. § 2134.

B.

In 1967, after notice and comment, the USDA promulgated regulations under the AWA, including licensing regulations. See Laboratory Animal Welfare, 32 Fed. Reg. 3270, 3270–71 (Feb. 24, 1967) (codified as amended at 9 C.F.R. §§ 2.1–2.12).[4] Since promulgating AWA licensing regulations, the USDA has distinguished "[a]pplication[s] for initial license" from "[a]pplication[s] for license renewal." See 9 C.F.R. §§ 2.2–2.4; Laboratory Animal Welfare, 32 Fed. Reg. at 3271 (outlining different procedures for initial-license applications (Sections 2.1–2.4), license renewals (Section 2.8(a)), and "reinstatement[s]" of recently-expired licenses (Section 2.8(b))); Animal Legal Def. Fund, 789 F.3d at 1220 (discussing the constancy of this distinction notwithstanding intervening regulatory changes).

Applicants for initial licenses must follow procedures prescribed in 9 C.F.R. §§ 2.1(a) and 2.6(a), acknowledge receipt of a copy of the applicable regulations and standards, see 9 C.F.R. § 2.2(a), and submit to an initial inspection to demonstrate compliance with USDA standards and regulations. See id. § 2.3(b); see also id. § 2.11(a) (listing persons disqualified from seeking initial licenses). An applicant who fails initial inspection "will have two additional chances to demonstrate his or her compliance with the regulations and standards." Id. § 2.3(b).

Different requirements apply to renewal applicants. License renewal applicants must, "within 30 days prior to the expiration date of his or her license, . . . file . . . an application for license renewal and annual report." Id. § 2.7(a). The renewal applicant must meet three requirements. First, the renewal applicant must report "the number of animals owned, held, or exhibited by him or her. . . during the previous year or at the time [of renewal], whichever is greater." Id. § 2.7(d); see N.C. Network for Animals, Inc. v. USDA, 924 F.2d 1052 n.1 (4th Cir. 1991) (per curiam) (unpublished

---

[4] At the time, the AWA provided only for the regulation of research facilities. In 1970, Congress extended the USDA's regulatory power to exhibitors. See Animal Welfare Act of 1970, Pub. L. No. 91-579, § 2, 84 Stat. 1560, 1560.

7

table decision) (discussing the applicability of the annual reporting requirement to dealers). Second, the applicant must pay a fee. See 9 C.F.R. §§ 2.1(d)(1), 2.5(a)–(b), 2.6. Third, the applicant must also "certif[y] by signing the application form that, to the best of the applicant's knowledge and belief, he or she is in compliance with the regulations and standards and agrees to continue to comply." Id. § 2.2(b).[5] A licensed exhibitor must satisfy all three requirements for renewal on or before the expiration date of the license, or the exhibitor's license will automatically terminate. Id. § 2.5(b); see id. § 2.1(d)(1). But see Benigni v. Maas, 12 F.3d 1102 (8th Cir. 1993) (unpublished table decision) (holding that a license did not expire immediately upon the expiration date because the licensee had not received "written notice and an opportunity to [cure his deficient application by

---

[5] Defendants suggest that 9 C.F.R. § 2.2(b) forbids the USDA from considering any evidence, such as disciplinary actions, when issuing a renewal. See [D.E. 9] 8. Section 2.2's statement that "[the USDA] will renew a license after the applicant . . . sign[s] the application form," however, does not make the renewal active upon signature of the form. Likewise, the regulation's use of the word "will" does not require mandatory renewal of any signed application form. For example, a signed form unaccompanied by a fee or annual report would not preserve an expiring license. See 9 C.F.R. §§ 2.1(d)(1), 2.5(b).

Instead, the distinction between initial license applications and renewals in section 2.2(a) and (b) merely narrows the paperwork required for a renewal. Until 2004, both initial license applicants and renewal applicants received copies of the applicable regulations and standards each year and were required to acknowledge receipt of the regulations and agree to comply with them by signing the renewal application form. 9 C.F.R. § 2.3 (2004). In 2004, the USDA amended the acknowledgment requirement, eliminating the annual mailing of the regulations to each licensee during renewal. See Animal Welfare; Inspection, Licensing, and Procurement of Animals, 69 Fed. Reg. 42089, 42091 (July 14, 2004); 9 C.F.R. § 2.2(b). Nonetheless, section 2.5 effectively constrains the USDA to considering only the three components of the renewal application: the annual report, fee, and signature certifying compliance. Specifically, section 2.5 states that "[a] license shall be valid and effective unless" it is (1) revoked or suspended pursuant to the AWA, (2) voluntarily terminated, (3) has expired or been terminated pursuant to the regulatory scheme, or (4) the licensee fails to pay the annual fee. 9 C.F.R. § 2.5(a). Termination under either the AWA or the regulatory scheme requires notice and a hearing. 7 U.S.C. § 2149(a); 9 C.F.R. § 2.12. Expiration occurs when a licensee fails to submit an annual report, certification of compliance, and an annual fee before the expiration date of the license. 9 C.F.R. § 2.5. Thus, a license that is not voluntarily terminated or terminated after notice and a hearing "shall be valid and effective" unless the renewal application lacks an annual report, certification, or fee. Moreover, when determining whether to issue a renewal, the USDA may consider only these three requirements. Pending complaints against a licensee and even known regulatory violations may lead to termination of a license pursuant to 7 U.S.C. § 2149(a) and 9 C.F.R. § 2.12, but they do not affect renewal.

8

paying the renewal fee]"). If an exhibitor fails to complete the renewal process, he or she "must follow the procedure applicable to new applicants." 9 C.F.R. § 2.5(c). If the exhibitor completes the renewal process before the expiration date, the exhibitor's original license, unless otherwise terminated, continues to "be valid and effective." Id. § 2.5(a).

The USDA may inspect licensed exhibitors. See 7 U.S.C. § 2146; 9 C.F.R. § 2.3(a); Marshall v. Barlow's, Inc., 436 U.S. 307, 322 n.19 (1978); cf. Hodgins v. USDA, 238 F.3d 421 (6th Cir. 2000) (unpublished table decision) (upholding a series of eight inspections of a facility subject to the regulation and holding that the inspectors did not violate the Fourth Amendment); Benigni, 12 F.3d at 1102 (holding that the AWA permits warrantless administrative searches). Additionally, any interested person may complain to the USDA if they suspect that a licensed exhibitor has violated the AWA. See 9 C.F.R. § 4.10; 7 C.F.R. §§ 1.131(a), 1.133(a)(1). Upon receiving a complaint, the USDA may initiate whatever investigation it deems appropriate. 7 C.F.R. § 1.133(a)(3). The "person submitting the information shall not be a party" to any subsequent proceeding. Id. § 1.131(a)(1), (4).

The USDA may terminate a license at any time for noncompliance with the applicable regulations, but the licensee is entitled to a hearing. 9 C.F.R. § 2.12; see 7 U.S.C. § 2146; 9 C.F.R. § 2.11(a)(2), (b); see also, e.g., Hodgins, 238 F.3d at 421 (analyzing due process afforded at a license revocation hearing and criticizing the Administrative Law Judge's evidentiary rulings); Hickey v. Dep't of Agric., 878 F.2d 385 (9th Cir. 1989) (unpublished table decision) (analyzing due process protections and affirming license suspension based on numerous violations, including falsification of annual report during license renewal process). Even when repeated inspections over the course of years show ongoing failure to comply with the regulations, the USDA must afford due process to licensees. E.g., Hickey, 878 F.2d at 385 (reviewing due process provided and ultimately affirming license revocation).

Here, the court must determine whether the USDA's animal exhibitor license renewal process

9

is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law... [or] in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C). The USDA's interpretation of the AWA in its regulations is entitled to Chevron deference if (1) "the statutory language is silent or ambiguous with respect to the question posed" and (2) "the agency's answer is based on a permissible construction of the statute." Am. Online, Inc., 243 F.3d at 817 (quotation omitted).

C.

To determine whether Chevron deference applies, the court first determines whether the AWA's statutory language "is silent or ambiguous with respect to the question posed." Am. Online, Inc., 243 F.3d at 817 (quotation omitted). Namely, "may the USDA renew the license of an exhibitor who has recent, documented violations of USDA regulations?"

PETA argues that 7 U.S.C. § 2133 forbids such a renewal. See [D.E. 16] 4–7, 11–19. In support, PETA cites 7 U.S.C. § 2133's declaration that "no [exhibitor] license shall be issued [by the USDA] until the . . . exhibitor shall have demonstrated that his facilities comply with [USDA] standards." See 7 U.S.C. § 2133.

The court rejects PETA's argument. First, the text of 7 U.S.C. § 2133 does not refer to license renewals. See id.; Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002) ("[In a statutory construction case,] we begin with the language of the statute. . . . The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent." (quotation omitted)); Sebelius v. Cloer, 133 S. Ct. 1886, 1895 (2013). Moreover, the relevant language in 7 U.S.C. § 2133 has not changed since Congress enacted the AWA. Compare 7 U.S.C. § 2133, with Animal Welfare Act of 1966 § 3. Then, as now, to "issue" a license meant to "giv[e] out" that license. Compare *Issue*, Webster's New Riverside Univ. Dictionary (2d. ed. 1988), with Animal Welfare Act of 1966 § 3. A modification to an existing license, such as an extension of the term length, does not constitute "giving out" a license. Thus, renewing a license through the USDA's administrative

10

renewal process does not constitute "issuance" of a new license. See Animal Legal Def. Fund, 789 F.3d at 1223.

Second, the context of the AWA supports this construction. The AWA grants the USDA discretion to prescribe the "form and manner" of any license application. 7 U.S.C. § 2133. Additionally, the AWA grants the USDA broad discretion to "promulgate such rules, regulations, and orders as [it] may deem necessary in order to effectuate the purposes of [the AWA]." Id. § 2151. Thus, reading the phrase "issue . . . licences" in 7 U.S.C. § 2133 to not apply to renewal of licenses comports with the AWA's general grant of discretion to the USDA to specify the form, terms, and other details of licensure.

Third, the limitations on the USDA's enforcement authority in 7 U.S.C. § 2149 also support the court's construction of 7 U.S.C. § 2133. Section 2149 imposes due process requirements before revoking an existing license. Section 2149 entitles a licensee to "notice and opportunity for hearing" if the USDA seeks to suspend a license for more than 21 days or revoke it. See id. § 2149. PETA's proposed construction of 7 U.S.C. § 2133 would eviscerate this protection. To avoid the cumbersome process of investigating an alleged violation and presenting evidence at a hearing, the USDA could simply cite the licensee for a violation shortly before the renewal date and refuse to issue the renewal. Such a result would render 7 U.S.C. § 2149 superfluous. Cf. TRW Inc. v. Andrews, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." (quotations omitted)).

In opposing this conclusion, PETA asks this court to look beyond the text of the statute and to the USDA's fee-collection practices under 7 U.S.C. § 2153. See [D.E. 16] 5, 14–15. According to PETA, section 2153 authorizes the USDA to collect "reasonable fees for licenses issued." See 7 U.S.C. § 2153. PETA then argues that the USDA relies upon 7 U.S.C. § 2153 to collect renewal fees, and that the USDA's interpretation of "issue" in section 2153 conflicts with its interpretation

of "issue" in section 2133. Although PETA's argument might implicitly challenge the USDA's statutory authority to collect renewal fees, the argument does not address whether the plain text of section 2133 applies only to the issuance of new licenses. The court need not opine on the USDA's authority to collect renewal fees under section 2153. The text of 7 U.S.C. § 2133 plainly does not apply to renewals, and the analysis stops there. See Sebelius, 133 S. Ct. at 1895; Barnhart, 534 U.S. at 450; see also Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs., 545 U.S. 967, 981 (2005) ("Agency inconsistency is not a basis for declining to analyze the agency's interpretation under the Chevron framework.").

No other section of the AWA addresses the challenged renewal process. Indeed, the AWA itself does not prescribe procedures for renewal, minimum requirements for renewal, or a maximum license duration. The statute does not even require that the licenses expire at all. See 7 U.S.C. §§ 2133, 2151 (granting the USDA broad discretion to "issue licenses" and to "promulgate such rules, regulations, and orders as [it] may deem necessary in order to effectuate the purposes of [the AWA]"); cf. Animal Legal Def. Fund, 789 F.3d at 1217–19 (contrasting the AWA with other statutes that specify license terms and renewal procedures and requirements). With regard to exhibitor license renewals, the AWA is silent. Thus, the court proceeds to Chevron's second step.

D.

The second step of Chevron does not invite a court to inject its own opinion about how an agency should construe the statute. Rather, the court must next determine whether the USDA's renewal process "is based on a permissible construction of the statute." Am. Online, Inc., 243 F.3d at 817 (quotation omitted). Moreover, the court must defer under Chevron so long as the agency interpretation is "permissible," and "permissible" does not mean "the best." Nat'l Cable & Telecomms. Ass'n, 545 U.S. at 980. Chevron deference restrains judges from indulging the tempting "prospect of making public policy by prescribing the meaning of ambiguous statutory commands." City of Arlington v. FCC, 133 S. Ct. 1863, 1873 (2013).

12

The USDA's renewal regulations permissibly construe its authority under the AWA. As discussed, the AWA reasonably supports the conclusion that the USDA has discretion over the length and terms of licenses issued under the statute. See 7 U.S.C. §§ 2133, 2151, 2153. Conversely, PETA's proposed construction would unreasonably render superfluous the AWA's statutory due-process protections for licensees. Cf. id. § 2149.

The USDA properly considered alternative licensing and enforcement structures during the notice and comment periods of earlier iterations of the renewal regulations. See, e.g., Animal Welfare; Inspection, Licensing, and Procurement of Animals, 69 Fed. Reg. 42089–01, 42091–92 (July 14, 2004); Animal Welfare; Licensing and Records, 60 Fed. Reg. 13893–901, 13894 (Mar. 15, 1995). The USDA faced competing concerns, including effective use of its own limited resources to protect animal welfare and procedural protections for licensees. The promulgated regulations reflect the agency's chosen balance between these policy concerns. This court will not "substitut[e] [its] own interstitial lawmaking for that of [the] agency." City of Arlington, 133 S. Ct. at 1873. The regulations permissibly construe the AWA. See Animal Legal Def. Fund, 789 F.3d at 1224; Animal Legal Def. Fund v. Vilsack, Civil Action No. 14-1462 (CKK), 2016 WL 1048761, at *10–11 (D.D.C. Mar. 14, 2016) (unpublished).

In sum, the AWA does not prohibit the USDA's administrative renewal process for exhibitor licenses. Rather, the USDA had discretion to promulgate the renewal regulations challenged here. The USDA did not act "arbitrar[ily] [or] capricious[ly]," "abuse [its] discretion," "exce[ed its] statutory jurisdiction, authority, or limitations," or otherwise violate the APA when it granted exhibitor license renewals in accordance with those regulations. 5 U.S.C. § 706(2)(A), (C); see Animal Legal Def. Fund, 789 F.3d at 1224 (holding that the renewal regulations "are entitled to Chevron deference, and USDA therefore did not act arbitrarily or capriciously by renewing [an exhibitor's] license"); Animal Legal Def. Fund, 2016 WL 1048761, at *10–11 (same). Thus, the court rejects PETA's challenge to the individual renewals and the policy of granting such renewals.

13

## IV.

In sum, the court GRANTS defendants' motion for judgment on the pleadings [D.E. 8] and DENIES plaintiff's motion to strike [D.E. 20]. Defendants may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This _12_ day of July 2016.

JAMES C. DEVER III
Chief United States District Judge